**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARGALIT CORBER; RENE CARO; STEVE DANTZLER; LINDA SOWARDS; LORI HUISMAN; JOHNNY GEORGE, SR.; TERRY PERRY; WILLIAM RACKLEY; ANGELA YOUNG; PAMELA RODRIGUEZ; STEVEN SYVERSON; OLGA CAICOYA; JANET CARROLL; ROSE CASH; ULAD CELENTANO; VIRGINIA COSTANZO; KIMBERLY FILLIGIM; ARMELDIA SMITH; CARLA WEST; JOANNE BIERZYNSKI, individually and as next of kin to Eleanor Wojcik; SHARLEY MORRIS; WYOMIA TIMMONS; DEAN REINKING; DANIEL THORNE; WENDELEN ASHBY; CARMEN BEDFORD; CLAUDE COMMODORE; JAMES HENSON; NANCY LOCKE; MILDRED SCOTT; BILLIE BURNETT; SHEENA HALL; BRENDA ROBERGE, individually and as next of kin to Ernest Roberge; DEBORAH WOODSUM; RICHARD PASCUITO, *Plaintiffs-Appellees*, <br><br> v. <br><br> XANODYNE PHARMACEUTICALS, INC., *Defendant-Appellant*. | No. 13-56306 <br><br> D.C. No. 2:12-cv-09986-PSG-E |

JUDITH ROMO; VINCENT TALDONE; ROBIN TAYLER; MARGARET TAYLOR; RANDY TAYLOR; RAY TEETS; LAWRENCE TELLS; KATHRYN TEMCHACK; CHARLES TERRY; VERONICA TERRY; ROBERTA THORNE; MARGARET TIVIS; LINDA TODD; DELORES TOOHEY; DEBRA TOURVILLE; DENA TSOUALS; ALLEN TURNER; CAROLYN TURNER; WANDA TURNER; STARLET TYRONE; GLORIA UNDERWOOD; HENRY UNDERWOOD; JANICE VANISON; WILLIAM VERHEYEN; CHARLES VILDIBILL; SHARON WALLGREN; PAM WALSH; SHARON WALSH; KEESHA WARRIOR; LATANGA WASHINGTON; DARLENE WATT; JAMES WEISS; WESLEY WELBORNE, III; DEBRA WHEELER; MARSHA WHITT; CAROLYN WHYNO; CECILIA WILCKENS; SANDRA WILEMON; STELLA WILKERSON-CLARK; JOANN WILLIAMS; JOYCE WILLIAMS; ROSE WILLIAMS; SHANTAS WILLIAMS; MARY WILSON; ROSE WILSON; PATSY WINZEY; JIMMIE WISE; RUTH WOLFSON; JUANITA WOODSON; LYNNE WYSOCKY, single individuals,

*Plaintiffs-Appellees*,

v.

No. 13-56310

D.C. No.
5:12-cv-02036-
PSG-E

OPINION

TEVA PHARMACEUTICALS USA, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted En Banc
June 19, 2014—Seattle, Washington

Filed November 18, 2014

Before: Alex Kozinski, Chief Judge, and Barry G.
Silverman, Susan P. Graber, Ronald M. Gould, Marsha S.
Berzon, Richard C. Tallman, Johnnie B. Rawlinson,
Richard R. Clifton, Mary H. Murguia, Morgan Christen,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Rawlinson

## SUMMARY[*]

### Class Action Fairness Act

The en banc court reversed the district court's orders granting motions to remand to state court based on the en banc court's conclusion that all of the Class Action Fairness Act requirements for a removable mass action were met under the totality of the circumstances.

The Class Action Fairness Act ("CAFA") extends federal removal jurisdiction for certain class actions and for mass actions in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common laws of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

These cases were two of twenty-six pending before the district court alleging injuries related to the ingestion of proxoxyphene, an ingredient found in pain reliever drugs. The plaintiffs moved for coordination in the state trial court pursuant to California Code of Civil Procedure section 404.

The en banc court held that plaintiffs' petitions to coordinate actions under Section 404 constituted proposals for these actions to be tried jointly, making the actions a "mass action" subject to removal and federal jurisdiction under CAFA.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Rawlinson, joined by Judge Berzon, dissented because she would not conclude that the plaintiffs implicitly requested a joint trial, and she would not find that the cases fit within the parameters for removal under CAFA.

---

## COUNSEL

Jay Lefkowitz (argued), Daniel A. Bress, and Danielle R. Sassoon, Kirkland & Ellis LLP, New York, New York; Ginger Pigott, Amy B. Alderfer, and Karin L. Bohmholdt, Greenberg Traurig, LLP, Los Angeles, California; Lori G. Cohen & Victoria D. Lockard, Greenberg Traurig, LLP, Atlanta, Georgia; Elliot H. Scherker, Greenberg Traurig, PA, Miami, Florida, for Defendant-Appellant Teva Pharmaceuticals, USA, Inc.

Karin Bohmholdt (argued), Greenberg & Traurig LLP, Los Angeles, California; Karen Woodward, Hall R. Marston, and Christopher P. Norton, Sedgwick LLP, Los Angeles, California; Linda E. Maichl, Michael J. Suffern (argued), Ulmer & Berne LLP, Cincinnati, Ohio, for Defendant-Appellant Xanodyne Pharmaceuticals, Inc.

Louis M. Bograd (argued) & Andre M. Mura, Center for Constitutional Litigation, Washington, D.C.; Matthew J. Sill, Sill Law Group LLP, Edmond, Oklahoma; Andrew N. Chang and Stuart B. Esner (argued), Esner, Chang & Boyer, Pasadena, California; Elise R. Sanguinetti, Khorrami Boucher Sumner LLP, Oakland, California; James P. Sizemore, The Sizemore Law Firm, El Segundo, California, for Plaintiffs-Appellees Romo, Corber, et al.

Jeremy B. Rosen, Horvitz & Levy LLP, Encino, California, for Amici Curiae Chamber of Commerce of the United States of America and PhRMA.

Richard Abbott Samp, Washington Legal Foundation, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

David M. Arbogast, ARBOGAST LAW, A.P.C., Los Angeles, California, for Amicus Curiae American Association for Justice.

John Beisner, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C., for Amicus Curiae Product Liability Advisory Council.

## OPINION

GOULD, Circuit Judge:

We must decide whether removal is proper under the "mass action" provision of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(11)(B)(i), when plaintiffs in several actions[1] moved for coordination in the state trial court pursuant to California Code of Civil Procedure section 404 "for all purposes" and justified their request in part by asserting a need to avoid inconsistent judgments. CAFA extends federal removal jurisdiction for certain class actions and for mass actions in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). Because we conclude that all of the CAFA requirements for a removable mass action are met under the totality of the circumstances in these cases, we reverse the district court's remand orders.

## I

Defendants-Appellants Teva Pharmaceuticals USA, Inc. ("Teva") and Xanodyne Pharmaceuticals, Inc. ("Xanodyne") appeal from the district court's orders remanding these cases to state court. These cases were two of twenty-six pending before the district court alleging injuries related to the ingestion of propoxyphene, an ingredient found in the Darvocet and Darvon pain relief drugs, as well as in generic pain relievers. There are additional propoxyphene cases

---

[1] Each of these actions has fewer than 100 plaintiffs, but the actions have far more than 100 plaintiffs when considered together.

pending in multidistrict litigation in the Eastern District of Kentucky. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379 (J.P.M.L. 2011).

Propoxyphene is a pain reliever that was used in the United States to treat mild to moderate pain from 1957 through November 2010, when drugs containing propoxyphene were taken off the market because of safety concerns. Teva held the rights to the generic form of Darvocet and Darvon, and Plaintiffs allege that Teva was involved in all aspects of the creation, distribution, and sale of generic propoxyphene products. Xanodyne acquired the rights to Darvocet and Darvon in 2007.

To date, more than forty actions have been filed in California state courts regarding propoxyphene pain relievers. On October 23, 2012, a group of attorneys responsible for many of the propoxyphene actions against Teva, Xanodyne, and other defendants filed petitions asking the California Judicial Council to establish a coordinated proceeding for all California propoxyphene actions under section 404 of the California Code of Civil Procedure.[2] California Code of Civil

---

[2] Under section 404, petitions for coordination are handled by the Chairperson of the Judicial Council, who "may assign a judge to determine whether the actions are complex, and if so, whether coordination of the actions is appropriate." Cal. Civ. Proc. Code § 404. The extent of coordination and the purposes for which cases are coordinated, including pre-trial, trial, and post-trial proceedings, are within the sole discretion of the Judicial Council and any judge assigned pursuant to section 404. *See id.* §§ 404.1–.9; *Abelson v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 35 Cal. Rptr. 2d 13, 18 (Ct. App. 1994) ("As a general matter the rules implementing our coordination statutes vest the coordinating judge with flexible procedures and whatever great breadth of discretion may be necessary and appropriate . . . ." (internal quotation marks and footnote omitted)).

Procedure section 404.1, which sets out the standards for coordination, states:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

Plaintiffs asked for coordination of their lawsuits for reasons consistent with the above factors, including concerns that there could be potential "duplicate and inconsistent rulings, orders, or judgments," and that without coordination, "two or more separate courts . . . may render different rulings on liability and other issues." Plaintiffs argued in their petitions and the supporting memoranda that the cases should be coordinated before one judge "hearing all of the actions for all purposes," to address "the same or substantially similar" causes of action, issues of law, and issues of material fact. After these petitions for coordination were filed, Teva and Xanodyne removed the cases to federal district court under CAFA's mass action provision.

CAFA provides federal district courts with original jurisdiction over "mass actions" if the actions meet all of the statutory requirements. 28 U.S.C. § 1332(d). CAFA defines a mass action as:

> [A]ny civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

28 U.S.C. § 1332(d)(11)(B)(i). The parties dispute only whether Plaintiffs' petitions for coordination constitute proposals for the cases "to be tried jointly" under CAFA.

The district court held that it lacked jurisdiction under CAFA because Plaintiffs' petitions for coordination were not proposals to try the cases jointly, and it remanded the cases back to state court. The district court distinguished these cases from the Seventh Circuit's decision in *In re Abbott Laboratories, Inc.*, 698 F.3d 568 (7th Cir. 2012), and held that Plaintiffs' petitions were sufficiently different from *Abbott*'s consolidation request because the petitions filed in this case focused on pre-trial purposes, while the petition filed in *Abbott* explicitly sought consolidation "through trial."

Defendants sought permission to appeal the district court's remand orders, which we granted. A three-judge panel affirmed. *See Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2872

(2014). A majority of nonrecused judges voted to rehear the case en banc. 742 F.3d 909 (9th Cir. 2014) (order). We review the district court's remand order *de novo*. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (per curiam).

## II

The controlling issue before us is whether Plaintiffs' petitions to coordinate actions under California Code of Civil Procedure section 404 constitute proposals for these actions to be tried jointly, making the actions a "mass action" subject to federal jurisdiction under CAFA. To answer that question, we turn to the language and purpose of CAFA. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 741–44 (2014). The statutory issue for us is whether the petitions filed in this case, seeking coordination of the California propoxyphene actions, were in legal effect proposals for those actions to be tried jointly. This is a question of first impression in the Ninth Circuit.

Congress enacted CAFA in 2005 to "curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009). CAFA further extends federal jurisdiction over "mass action" cases when several requirements are met, although only the "proposed to be tried jointly" requirement is at issue here. *See* 28 U.S.C. § 1332(d)(2), (6), (11)(A).

We have said that CAFA's mass action provision is "fairly narrow," *Tanoh*, 561 F.3d at 953, given that it applies only if there is an aggregate amount in controversy of $5

million or more, at least one plaintiff who is a citizen of a state or foreign state different from that of any defendant, and when "monetary relief claims of 100 or more persons are proposed to be tried jointly," 28 U.S.C. § 1332(d)(11)(B)(i); *see Tanoh*, 561 F.3d at 952–53. *Tanoh v. Dow Chemical Co.* holds, consistent with the plain language of CAFA, that the proposal to try claims jointly must come from the plaintiffs, not from the defendants. 561 F.3d at 953. Further, *Tanoh* correctly holds that if the mass action provision's requirements are not met, we cannot ignore its terms based on general statements in CAFA's legislative history or the theory that plaintiffs should not be able to "game" jurisdictional statutes to remain in state court. *Id*. at 954.

*Tanoh* also holds that plaintiffs are the "masters of their complaint" and do not propose a joint trial simply by structuring their complaints so as to avoid the 100-plaintiff threshold. *Id*. at 953, 956; *see Parson v. Johnson & Johnson*, 749 F.3d 879, 886 (10th Cir. 2014); *Scimone v. Carnival Corp.*, 720 F.3d 876, 881–82 (11th Cir. 2013); *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010). Under this view, plaintiffs can structure actions in cases involving more than 100 potential claimants so as to avoid federal jurisdiction under CAFA. That is not surprising, and it is analogous to the fact that individuals and corporations can structure transactions so as to avoid statutory prohibitions or terms. Amici Chamber of Commerce of the United States of America and PhRMA urge us to conclude that the Supreme Court's decision in *Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345 (2013), fatally "undermines *Tanoh*'s reasoning and holding." We reject this interpretation of *Knowles*, which itself reiterates that plaintiffs are the "masters of their complaints" who may structure those complaints to

avoid federal jurisdiction in some circumstances.  *See id.* at 1350.[3]

But while plaintiffs are the masters of their complaints, they are also the masters of their petitions for coordination. Stated another way, when we assess whether there has been a proposal for joint trial, we hold plaintiffs responsible for what they have said and done.  California Code of Civil Procedure section 404 allows the coordination of "all of the actions for all purposes" and presents a factor-based test to determine whether coordination is appropriate.  Plaintiffs voluntarily asked for coordination under section 404, and they submitted memoranda in support of their petitions for coordination.  We will carefully assess the language of the petitions for coordination to see whether, in language or substance, they proposed a joint trial.

We conclude that Plaintiffs' petitions for coordination are proposals for joint trial.  First, the petitions say that Plaintiffs seek coordination "for all purposes."  "All purposes" must

---

[3] In *Knowles*, the Supreme Court rejected a proposed class action plaintiff's attempt to stipulate that damages would not exceed $5 million. 133 S. Ct. at 1350 ("[T]he stipulation at issue here can tie Knowles' hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class.").  It is possible to read *Knowles* narrowly to mean only that named plaintiffs cannot stipulate to limit the damages claims of unnamed class members prior to class certification.  Yet, the Court did limit in at least one way the strategies a plaintiff may use to avoid federal jurisdiction under CAFA when it declined to "exalt form over substance" for "CAFA jurisdictional purposes."  *Id*.

include the purposes of trial. So reading the petitions literally, Plaintiffs, who in total number far more than 100, were seeking a joint trial. Second, the specific reasons given for coordination also support the conclusion that a joint trial was requested. For example, Plaintiffs listed potential issues in support of their petitions that would be addressed only through some form of joint trial, such as the danger of inconsistent judgments and conflicting determinations of liability.

Our conclusions here are consistent with *Tanoh*, where we held that "the decision to try claims jointly and thus qualify as a 'mass action' under CAFA should remain . . . with plaintiffs." 561 F.3d at 954. Unlike the plaintiffs in *Tanoh*, who merely filed separate actions that the defendant sought to try jointly, Plaintiffs' filing of the petitions for coordination was a voluntary and affirmative act that we conclude was a proposal to try the cases jointly. *See id.* at 953–54.

Plaintiffs contend that they were simply reciting the section 404.1 factors, but we find this argument unpersuasive given the language of the petitions and the supporting memoranda. Plaintiffs did not simply recite the factors for coordination. They asserted that "[t]he inevitability of realizing the inconsistency and duplication factor of California Code of Civil Procedure Section 404.1[] weighs heavily in favor of coordination." Plaintiffs further asserted that "issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants," would require coordination. None of these particular arguments is listed in the section 404 factors, and achieving consistency in these areas would almost certainly

require a joint trial.[4]  Plaintiffs' petitions requested more than pre-trial coordination.  Plaintiffs repeatedly stated that the factors catalogued in section 404.1 all supported coordination, including the fact that "[o]ne judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice."  In the application of a jurisdictional rule, as well as in its establishment, we agree with the Supreme Court's observation that "simplicity is a virtue."  *Hood*, 134 S. Ct. at 744 (internal quotation marks omitted).  Looking at the plain language of Plaintiffs' petitions and memoranda, we must conclude that Plaintiffs proposed a joint trial in asking that "all of the actions" be coordinated "for all purposes."

This is not to say that all petitions for coordination under section 404 are *per se* proposals to try cases jointly for the purposes of CAFA's mass action provision.[5]  We can envision a section 404 petition that expressly seeks to limit its request for coordination to pre-trial matters, and thereby align with the mass action provision's exception for "any civil

---

[4] Although some of these purposes could theoretically be addressed without a joint trial, through default judgment or summary judgment, it is not realistic to think that all of the concerns listed in Plaintiffs' petitions for coordination could be achieved in pre-trial procedures.  Those concerns were joined with requests to coordinate the actions "for all purposes."  The petitions did not limit their scope to pre-trial procedures.

[5] Plaintiffs also argue that their petitions were not proposals to try the cases jointly because section 404 petitions for coordination need not result in coordination for all purposes under *McGhan Medical Corp. v. Superior Court*, 14 Cal. Rptr. 2d 264 (Ct. App. 1992).  However, this argument is misplaced because under the plain language of CAFA, we must determine whether Plaintiffs *proposed* a joint trial, not whether one will occur at some future date.  That a judge has discretion to limit coordination to pre-trial matters does not weigh on whether Plaintiffs proposed a joint trial.

action in which . . . the claims have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). It is not clear whether the California Judicial Council would grant coordination for less than "all purposes." However, if Plaintiffs had qualified their coordination request by saying that it was intended to be solely for pre-trial purposes, then it would be difficult to suggest that Plaintiffs had proposed a joint trial.[6] But where, as here, plaintiffs petition for coordination by arguing that "hearing all of the actions" together "for all purposes" would promote the ends of justice, they propose a joint trial, triggering federal jurisdiction as a mass action under CAFA.

We reject the rule urged by Plaintiffs that a petition to evoke CAFA must expressly request a "joint trial" in order to be a proposal to try the cases jointly. Although such a rule would be easy to administer, it would ignore the real substance of Plaintiffs' petitions. *See Abbott*, 698 F.3d at 572 ("[A] proposal for a joint trial can be implicit."); *see also Atwell v. Bos. Scientific Corp.*, 740 F.3d 1160, 1163 (8th Cir. 2013) (holding that proposals for joint trial may be made implicitly); *Bullard v. Burlington N. Santa Fe Ry.*, 535 F.3d 759, 762 (7th Cir. 2008) (same).

Two of our sister circuits have reached similar conclusions when examining petitions for consolidation. In *Abbott*, the Seventh Circuit reasoned that the plaintiffs' petition for consolidation "through trial" and "not solely for pretrial proceedings" was a proposal to try jointly their

---

[6] The parties have argued about whether invoking section 404 in and of itself, even in a petition that expressly sought only pre-trial coordination, would constitute a proposal to try cases jointly, but that issue is not now before us.

separately filed cases.  698 F.3d at 573.  The Seventh Circuit concluded that, contrary to the plaintiffs' assertion that they did not specifically ask for a joint trial, the language of the plaintiffs' petition for consolidation could be construed only as an implicit proposal for joint trial.  *Id*.  Plaintiffs here seek to distinguish their own "for all purposes" language from the "through trial" language present in *Abbott*, but the differences between the two phrasings are superficial, and we are not persuaded.

The Eighth Circuit adopted *Abbott*'s reasoning, concluding that plaintiffs proposed a joint trial when they filed motions asking for special assignment "to a single judge *for both pretrial and trial matters*," and then argued at the motions hearing that the special assignment made sense "for consistency of rulings, judicial economy, [and] administration of justice."  *Atwell*, 740 F.3d at 1164 (alteration in original). The Eighth Circuit decided that "the motions for assignment to a single judge . . ., combined with plaintiffs' candid explanation of their objectives, required denial of the motions to remand" the cases to state court.  *Id*. at 1166.  Plaintiffs further attempt to distinguish their own petitions for coordination from *Atwell* on the basis that "[t]here is no such explicit language in Plaintiffs' petition," but again we find this distinction unpersuasive given the language of Plaintiffs' memoranda in support of their petitions, which both sought coordination "for all purposes" and gave reasons that likely would be satisfied only by a joint trial of some sort.

Asking for coordination or consolidation "for all purposes" or "through trial" to address common issues of law or fact is a proposal to try the cases jointly and creates federal jurisdiction under CAFA's mass action provision.  To hold otherwise would ignore the plain language, as well as the

substance, of Plaintiffs' section 404 petitions and supporting memoranda.

### III

Because we conclude that Plaintiffs' petitions for coordination each constitute a proposal to try the cases jointly, we **REVERSE** the district court's orders granting Plaintiffs' motions to remand.[7]

**REVERSED.**[8]

---

[7] In light of our decision, we do not reach Defendants-Appellants' alternative argument that federal subject-matter jurisdiction exists on other grounds.

[8] We disagree with our dissenting colleague for the reasons stated in this opinion. First, the dissent relies on parts of plaintiffs' memorandum supporting the petition for coordination that urged benefits of coordinating discovery, but nowhere in the petition or supporting memorandum was it suggested that coordination would be solely for pre-trial discovery. Second, the dissent gives inadequate consideration to the fact that the petition itself recites that it seeks coordination of all the actions "for all purposes." Because coordinating "for all purposes" includes for the purposes of trial, the petition for a coordinating state court was implicitly a request for joint trial. Third, the position urged by the dissent would create conflict with decisions of the Seventh and Eighth Circuits, which have recognized that there can be implicit requests for joint trial evoking CAFA jurisdiction. Fourth, the principles of ambiguity not favoring federal jurisdiction and of strict construction of jurisdictional statutes are not offended here because there is nothing ambiguous about asking for coordination "for all purposes." Fifth, the district court cases cited by the dissent in its footnote 1 are not persuasive to us, because these cases do not interpret CAFA, do not involve a petition for consolidation or coordination for all purposes, and do not address the persuasive authority of Seventh and Eighth Circuits on such issues.

RAWLINSON, Circuit Judge, with whom Judge BERZON joins, dissenting:

This is admittedly a fairly close case but, upon reflection, I respectfully dissent from the conclusion of my esteemed colleagues that this case fits within the parameters for removal under the Class Action Fairness Act of 2005 (CAFA).

I start from the well-established premise that removal is disfavored when determining federal jurisdiction, and that any doubt that exists when considering removal statutes should be construed against removal. *See Tanoh v. Dow Chemical Corp.*, 561 F.3d 945, 953 (9th Cir. 2009); *see also State of Hawaii v. HSBC Bank Nev. N.A.*, No. 13-15611, — F.3d —, 2014 WL 3765697 (9th Cir. Aug. 1, 2014). As we also recognized in *Tanoh*, CAFA's mass action provision is "fairly narrow." 561 F.3d at 953.

With those principles firmly in mind, I reach a different conclusion than that of the majority. The plain language of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11)(B)(i), confers jurisdiction upon federal district courts to try a "mass action." A mass action is defined as:

> any civil action . . . in which monetary relief claims of 100 or more persons are *proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact . . .

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

The majority concludes that the Plaintiffs proposed their cases "to be tried jointly" by filing a petition for coordination pursuant to California Code of Civil Procedure § 404.1.  That section provides:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and the likelihood of settlement of the actions without further litigation should coordination be denied.

CCCP § 404.1.

The plaintiffs' petition for coordination stopped short of requesting a joint trial as contemplated by the plain language of the statute.  *See* 28 U.S.C. § 1332(d)(11)(B)(i) (defining a mass action as one in which claims of 100 or more persons "are proposed to be tried jointly").

On page 6 of the Memorandum of Points and Authorities in support of the petition, plaintiffs gave the following explanation for seeking coordination:

> Petitioners' counsel anticipates that the actions will . . . involve *duplicative requests for the same defendant witness depositions and the same documents related to development, manufacturing, testing, marketing, and sale of the Darvocet Product.* Absent coordination of these actions by a single judge, *there is a significant likelihood of duplicative discovery*, waste of judicial resources and possible inconsistent judicial rulings on legal issues.

(Emphases added).

It is a stretch to parse a proposal for a joint trial from this language. Rather, the obvious focus was on pretrial proceedings, *i.e.*, discovery matters.

On page 7 of the memorandum, plaintiffs informed the court that coordination was also sought because "*[u]se of committees and standardized discovery in a coordinated setting* will expedite resolutions of these cases, avoid inconsistent results, and assist in alleviating onerous burdens on the courts as well as the parties." (Emphases added). Again, we see a focus on pretrial proceedings, with no mention of a joint trial.

On page 8, the plaintiffs urged coordination on the following bases:

> One judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice; Common questions of fact or law are predominating and

significant to the litigation; Coordination may serve the convenience of parties, witnesses and counsel the relative development of the actions and the work product of counsel; Coordination may facilitate the efficient utilization of judicial facilities and manpower; Coordination may enhance the orderly calendar of the courts; Without coordination, the parties may suffer from disadvantages caused by duplicative and inconsistent rulings, orders or judgments . . .

Plaintiffs also stated: "[I]n light of the similarity of the actions, there will be *duplicate discovery obligations* upon the common defendants *unless coordination is ordered*. Coordination before initiation of discovery in any of the cases will eliminate waste of resources and will facilitate economy. . . ." (Emphases added). Unlike the cases from the Seventh and Eighth Circuits cited in the majority opinion, not once does the Petition For Coordination mention "joint trial" or even "trial." Rather, the continued focus is on pretrial matters.

The majority opinion isolates the phrases "duplicate and inconsistent rulings, orders, or judgments," "two or more separate courts . . . may render different rulings on liability and other issues," and "hearing all of the actions for all purposes" to support its conclusion that the plaintiffs sought a joint trial. *Majority Opinion*, p. 9. In doing so, the majority completely ignores all references to discovery, including on the same page containing the reference to liability, where Plaintiffs stated: "[I]n light of the similarity of the actions, there will be *duplicate discovery obligations* upon the common defendants *unless coordination is ordered*.

*Coordination before initiation of discovery in any of the cases* will eliminate waste of resources and will facilitate economy. . . ." (Emphases added). A fair reading of the entire petition for coordination reflects a decided focus on pretrial matters.

Reliance by the majority on the quoted portions of the petition to the exclusion of all else is inconsistent with the command that any doubt about federal jurisdiction be resolved in favor of remand. This is especially true where most of the quoted words have little to do with trial. I am not persuaded that a reference to "rulings and orders" evokes the concept of trial rather than pretrial matters. Indeed, the opposite may be true:

> An order is the mandate or determination of the court upon some subsidiary or collateral matter arising in an action, not disposing of the merits, but adjudicating a preliminary point or directing some step in the proceedings.

Black's Law Dictionary 1270 (10th ed. 2009) (citing 1 Henry Campbell Black, *A Treatise on the Law of Judgments*, § 1, at 5 (2d ed. 1902)).

In turn "[r]ulings on motions are ordinarily orders . . ." *Id*. (citing 1 A.C. Freeman, *A Treatise on the Law of Judgments*, § 19, at 28 (Edward W. Tuttle ed., 5th ed. 1925)). Consequently, at best, Plaintiffs' reference to rulings and orders is ambiguous, and ambiguity defeats removal. *See Tanoh*, 561 F.3d at 953.

The majority is also on shaky ground when relying on the plaintiffs' reference to inconsistent judgments, because judgments may be rendered outside the confines of a trial. Default judgments and summary judgments come readily to mind. *See* Federal Rules of Civil Procedure 55 and 56 (providing for entry of judgment prior to trial). Indeed, it is not at all uncommon for similar cases to be resolved short of trial. *See, e.g.*, *Navarrette v. Armite Labs. Inc.*, No. B203997, 2009 WL 1040304 at *1 (Cal. App. 2 Dist., April 20, 2009) ("Plaintiffs filed a tort action against 78 manufacturers and suppliers of products used for metal fabrication at a now-defunct foundry, where plaintiffs once worked. Plaintiffs allege that they were injured by their workplace exposure to defendants' products. The trial court dismissed the case after sustaining demurrers to the plaintiffs' fourth amended complaint, without leave to amend."). Judgment in favor of defendants was affirmed; *see id.; see also Baycol Cases I and II*, No. B20493, 2009 WL 3353536 at *3 (Cal. App. 2 Dist., Oct. 20, 2009) ("Several hundred cases involving Baycol, including a number of class actions, which had been filed in California were consolidated in a Judicial Council Coordinated Proceeding (JCCP) in Los Angeles Superior Court. . . . During the next approximately two years *many of the cases in the JCCP were dismissed or resolved* in [defendant's] favor on *summary judgment*. . . .") (emphases added).

Plaintiffs' reference to rulings on liability also fit readily within the concept of resolving cases short of trial. *See id.* (resolving cases in defendant's favor on summary judgment). Unsurprisingly, the majority's contrary notion that a joint trial is "almost certainly require[d]" to determine liability, *Majority Opinion*, p. 14–15, is not supported by citation to any California authority. The district court judges who

rendered decisions remanding these cases to state court are all seasoned California practitioners, and not one of them interpreted the Petition For Coordination as requesting a joint trial. *See Freitas v. McKesson*, No. 12-5948 SC, 2013 WL 685200 at *4 (N.D. Cal. Feb. 25, 2013) (declining to "[i]nfer[ ] a request for a joint trial from Plaintiffs' Petition, which does not expressly request such a trial"); *see also Rice v. McKesson Corp*., No. C12-05949 WHA, 2013 WL 97738 at *2 (N.D. Cal. Jan. 7, 2013) (rejecting the argument that Plaintiffs "implicitly proposed a removable mass action in their coordination petition by using the ambiguous language 'for all purposes' and 'by raising the possibility of inconsistent judgments'"); *Rentz v. McKesson Corp*., No. CV 12-9945 PSG, 2013 WL 645634 at *3 (C.D. Cal. Feb. 20, 2013) (noting that the language in the petition for coordination "focuses on coordination for pretrial purposes" and "the complete lack of any mention of joint trial"); *Posey v. McKesson Corp*., No. C 12-05939 RS, 2013 WL 361168 at *3 (N.D. Cal. Jan. 29, 2013) (holding that "[c]onstruing plaintiffs' petition for coordination as the functional equivalent of an express request for a joint trial would conflict with both the guidance provided by our court of appeals in *Tanoh*, as well as with the general canon of strict construction of removal statutes) (citation and alteration omitted).

The cases from the Seventh and Eighth Circuit relied upon by the majority are easily distinguishable. In this case, the Plaintiffs requested coordination of the cases "for all purposes." The majority reads that phrase as implicitly requesting a joint trial, citing the Seventh Circuit's decision in *In re Abbott Laboratories, Inc*., 698 F.3d 568 (7th Cir. 2012). However, not only did the Seventh Circuit consider a completely different procedure, consolidation as opposed to

coordination, *see id*., at 570, the plaintiffs' request in that case explicitly and expressly referenced "consolidation of the cases *through trial* and *not* solely for pretrial proceedings," thereby removing any question of the plaintiffs' intent. *Id*. at 571 (footnote reference and internal quotation marks omitted) (emphases added). In fact, there was really nothing implicit about the *Abbott* plaintiffs' request for a joint trial. Rather, the request for a joint trial was open and notorious.

In a similar vein, the plaintiffs in *Atwell v. Boston Scientific Corp*., 740 F.3d 1160, 1161 (8th Cir. 2013) requested that their cases be assigned "to a single judge for purposes of discovery *and trial* . . ." (emphasis added); *see also Bullard v. Burlington Northern*, 535 F.3d 759, 761–62 (7th Cir. 2008) ("A complaint identifying 144 plaintiffs . . . implicitly proposes one trial. . . ."); *Koral v. Boeing*, 628 F.3d 945, 947 (7th Cir. 2011) (citing *Bullard*, 535 F.3d at 762 for the proposition that a proposal for a joint trial "can be implicit, as where *a single complaint joins more than 100 plaintiffs' claims* . . .") (emphasis added). None of these cases address the facts of this case, where there was not a single Complaint joining over one hundred plaintiffs, and there was no use of the word "trial" anywhere in the petition seeking coordination.

The California district court judges who considered this issue uniformly distinguished *Abbott*. *See Freitas*, 2013 WL 685200 at *4 ("*Abbott* concerned plaintiffs who had explicitly asked for their cases to be consolidated 'through trial' and 'not solely for pretrial proceedings.' *Abbott* is therefore distinguishable . . . ") (citation omitted); *Rice*, 2013 WL 97738 at *2 ("Defendants' reliance on . . . *Abbott* is misplaced. . . ."); *Rentz*, 2013 WL 645634 at *3 ("The Court is neither persuaded that it should follow *Abbott* nor that

*Abbott* applies to the facts of the present case. . . ."); *Posey*, 2013 WL 361168 at \*3 ("*Abbott* is easily distinguishable from the present case on its facts. . . ."). I am persuaded to the view of these able district court judges. *See United States v. Graf*, 610 F.3d 1148, 1160 (9th Cir. 2010) (referencing decisions from district courts within the circuit); *see also In re First Alliance Mort. Co.*, 471 F.3d 977, 1005 (same).

The conclusion that Plaintiffs implicitly requested a joint trial is not supported by the language of CAFA or by the cases from the Seventh and Eighth Circuits so heavily relied upon by the majority. That conclusion is inconsistent with precedent from the Supreme Court and this circuit that Plaintiffs are the masters of their Complaints, that removal statutes (including CAFA) are to be construed narrowly, that any ambiguity is to be construed *against* removal[1], and that

---

[1] I disagree with the majority's unsupported contention that "there is nothing ambiguous about asking for coordination 'for all purposes.'" *Majority Opinion*, p. 18 n.8 (internal quotation marks omitted). That contention simply begs the question. Considering the petition for coordination as a whole, the phrase "for all purposes" could easily be interpreted as referring to all pretrial or discovery purposes, particularly in view of the consistent explicit references to pretrial and discovery matters, and not one mention of the word "trial." *See Far West Federal Bank, S.B. v. Dir., Office of Thrift Supv.*, 746 F. Supp. 1042, 1048 (D. Or. 1990), *reversed on other grounds*, 951 F.2d 1093 (9th Cir. 1991) (finding the phrase "for all purposes" ambiguous); *see also Francis v. LaMarque*, No. C01-3957, 2002 WL 31414310 at \*4 (N.D. Cal. 2002) (finding an instruction containing the phrase "for all purposes" ambiguous when considered in the context of another instruction). The majority criticizes these cases as being distinguishable, but still offers no supporting authority for its contention that the phrase "for all purposes" is not ambiguous. The fact remains that the phrase "for all purposes" upon which the majority so heavily relies has been found ambiguous by at least two courts.

the plain language of the statute controls.  Finally, nothing prevents Defendants from seeking removal if and when Plaintiffs actually request a joint trial.  *See Tanoh*, 561 F.3d at 956.  I respectfully dissent.

---

The majority also argues that the Plaintiffs' petition for coordination did not state that coordination was sought *solely* for pretrial purposes. But neither does the petition state that a joint trial is requested.  At least the words "pretrial" and "discovery" were specifically and consistently referenced in Plaintiffs' petition, which is more than can be said for the words "joint trial," which were not mentioned at all.  Finally, as discussed in the text, affirming the district court's remand would not create a circuit split, because the cases from the Seventh and Eighth Circuits are readily distinguishable, most notably by an explicit request from Plaintiffs for a joint trial.