# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-8020, 12-8021, 12-8022, 12-8023,
    12-8024, 12-8025 & 12-8026

IN RE:

   ABBOTT LABORATORIES, INC.,

                                                              *Petitioner.*

Petitions for Permission to
Appeal from the United States District Court
for the Southern District of Illinois.
Nos. 3:12-cv-00052, 3:12-cv-00163, 3:12-cv-00053,
3:12-cv-00054, 3:12-cv-00055, 3:12-cv-00056,
3:12-cv-00057—**G. Patrick Murphy**, *Judge.*

No. 12-8027

IN RE:

   ABBOTT LABORATORIES, INC.,

                                                              *Respondent.*

Petition for Permission to
Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:12-cv-00385—**John W. Darrah**, *Judge.*

SUBMITTED JUNE 7, 2012—DECIDED OCTOBER 16, 2012

Before KANNE, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* The parties petition us to resolve two conflicting district court decisions and decide whether a motion to consolidate and transfer related state court cases to one circuit court through trial constitutes a proposal to try the cases jointly, thus triggering the "mass action" provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11)(B)(i). We grant the petitions for review in order to resolve the differing approaches by the two district courts, and because the petitions present a novel issue, *see Koral v. Boeing Co.*, 628 F.3d 945, 946 (7th Cir. 2011), where a decision will be helpful to future litigants. We hold that plaintiffs' motion to consolidate did propose a joint trial, and thus removal was proper.

Between August 2010 and November 2011 several hundred plaintiffs filed ten lawsuits in Illinois state court against Abbott Laboratories for personal injuries they allege were caused by Depakote, a prescription medication Abbott developed and markets.[1] Plaintiffs filed their lawsuits in St. Clair County, Madison County, and Cook County. In December 2011 plaintiffs moved the Supreme Court of Illinois to consolidate and transfer their cases to St. Clair County, pursuant to Illinois Supreme Court Rule 384. Abbott opposed the motion, and as of this date, the Supreme Court has not ruled. Rule 384(a) says:

---

[1] An eleventh case was filed on February 24, 2012.

*Motion to Consolidate—Transfer.* When civil actions involving one or more common questions of fact or law are pending in different judicial circuits, and the supreme court determines that consolidation would serve the convenience of the parties and witnesses and would promote the just and efficient conduct of such actions, the supreme court may, on its own motion or on the motion of any party filed with the supreme court, transfer all such actions to one judicial circuit for consolidated pretrial, trial, or post-trial proceedings.

Plaintiffs asked for consolidation of their lawsuits in St. Clair County because the cases "present common questions of fact concerning Abbott's development, testing, manufacturing, and marketing of Depakote, as well as common questions of law regarding Abbott's liability for same" and "[c]onsolidation will eliminate duplicative discovery and pretrial litigation, prevent inconsistent pretrial and trial rulings, and thereby promote judicial efficiency." In the memorandum in support of their motion, plaintiffs said they were requesting consolidation of the cases "through trial" and "not solely for pretrial proceedings."[2]

Abbott removed each of the cases to federal court, asserting that the motion to consolidate brought the

---

[2] Because of this language, plaintiffs' motion to consolidate is not governed by 28 U.S.C. § 1332(d)(11)(B)(ii)(IV), which excludes as mass actions those cases consolidated solely for pretrial proceedings.

cases under CAFA's "mass action" provision, which allows the removal of any case where 100 or more people propose to try their claims jointly. The cases filed in St. Clair County and Madison County were removed to the Southern District of Illinois and the cases filed in Cook County were removed to the Northern District of Illinois; plaintiffs moved to remand in both courts.

Judge Murphy in the Southern District ruled on plaintiffs' motions to remand first, granting the motions on April 17, 2012. He held that Abbott's arguments were foreclosed by our decision in *Anderson v. Bayer*, 610 F.3d 390 (7th Cir. 2010), and concluded that the language in the motion to consolidate did not propose a joint trial. He said, "it appears that Plaintiffs contemplate consolidated discovery and pretrial proceedings, but not a joint trial of the hundreds of claims asserted in the ten subject cases. This is consistent with the Court's experience, in which so-called 'mass tort' cases are never tried in their entirety, and instead 'bellwether' claims selected by the parties are tried individually in order to answer difficult issues of causation or liability common to all the claims and/or to value the remaining claims in the case for purposes of settlement." Judge Darrah disagreed, and on May 9, 2012, denied plaintiffs' motion to remand. He said the motion to consolidate "clearly intends to move the Illinois Supreme Court to consolidate the 10 complaints for all purposes, including (as they specifically indicate) for purposes of conducting a trial." Abbott petitioned us to review Judge Murphy's decision, and plaintiffs petitioned for review of Judge

Darrah's decision. The parties now seem to agree that interlocutory review is warranted but dispute whether plaintiffs' cases constitute a mass action.

Section 1332(d)(11)(B)(i) defines a mass action as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." Under CAFA, such mass actions are removable to federal court, so long as CAFA's other jurisdictional requirements are met. *Id.* § 1332(d)(11)(A). The parties do not dispute that the other requirements are met in each of the cases.

Plaintiffs argue that they did not propose a joint trial because their motion to consolidate did not address how the trials of the various claims in the cases would be conducted, other than proposing that they all take place in the Circuit Court of St. Clair County. Their motion and memorandum do not propose that one or more of the cases be tried jointly or that all parties would be bound by the findings of one trial. Rather, plaintiffs contend, their motion simply requests that the cases be *coordinated* through trial. If the motion is granted the transferee trial court would decide how to administer the cases, including how any trial would be conducted. In plaintiffs' view, for the mass action provision to apply they would need to take the further step of requesting a joint trial or an exemplar trial that would affect the remaining cases.

We have addressed CAFA's mass action provision several times, but never in the context of a motion to

consolidate. Judge Murphy concluded that Abbott's position was foreclosed by our decision in *Anderson*, 610 F.3d 390. There, plaintiffs filed five separate but mostly identical complaints in state court. Bayer argued that plaintiffs were attempting to circumvent CAFA's mass action provision by artificially splitting their claims into five cases. We looked at CAFA's statutory language and held that the complaints did not constitute a mass action because plaintiffs never proposed to try their claims jointly. *Id.* at 393; *see Tahoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (reaching similar conclusion). As long as plaintiffs had not proposed a joint trial, "[t]he mass action provision gives plaintiffs the choice to file separate actions that do not qualify for CAFA jurisdiction." *Anderson*, 610 F.3d at 393. Under the reasoning of *Anderson*, plaintiffs were not in danger of having their cases removed when they filed eleven similar complaints in state court. But when they moved the Supreme Court of Illinois to consolidate their cases through trial—reasonably construed by Abbott as a proposal for a joint trial—*Anderson* no longer controlled.

Plaintiffs argue that they never specifically asked for a joint trial, but a proposal for a joint trial can be implicit. In *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759 (7th Cir. 2008), plaintiffs filed a complaint identifying 144 plaintiffs, but argued that because the complaint did not propose a joint trial, the suit was not a mass action. *Id.* at 761. We held that one complaint implicitly proposes one trial and thus the suit was a mass action. *Id.* at 762.

And in *Koral v. Boeing, Co.*, 628 F.3d 945, 947 (7th Cir. 2011), we examined whether a statement in response to a motion to dismiss could be considered a proposal for a joint trial. Boeing moved to dismiss plaintiffs' 29 lawsuits based on *forum non conveniens*, arguing that it would be inconvenient for its employees in Washington to travel to Illinois to testify in 29 trials. *Id.* at 946. Plaintiffs' attorney responded that there likely would be only one exemplar trial to determine liability. Boeing then removed the cases to federal court, arguing that counsel's statement was a proposal to try the cases jointly. We disagreed and said, "We think the plaintiff's statement falls just short of a proposal, as it is rather a prediction of what might happen if the judge decided to hold a mass trial." *Id.* at 947.

Although we held in *Koral* that plaintiffs did not propose a joint trial, we reiterated that a proposal for a joint trial can be implicit, particularly where "the assumption would be that a single trial was intended." *Id.* at 947. We added that a joint trial does not have to encompass relief. For example, a trial on liability could be limited to a few plaintiffs, after which a separate trial on damages could be held. *Id.* Similarly, we have said that a trial that involved only "10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs without another trial, is one in which the claims of 100 or more persons are being tried jointly." *Bullard,* 535 F.3d at 762. In short, a joint trial can take different forms as long as the plaintiffs' claims are being determined jointly.

Plaintiffs may not have explicitly asked that their claims be tried jointly, but the language in their motion comes very close. As noted above, plaintiffs requested consolidation of their cases "through trial" and "not solely for pretrial proceedings." They further asserted that consolidation through trial "would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases *without the risk of inconsistent adjudication* in those issues between various courts" (emphasis added). We agree with Abbott that it is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases. In either situation, plaintiffs' claims would be tried jointly. Although plaintiffs assert that the transferee court will decide how their cases proceed to trial, "[i]t does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed." *Bullard*, 535 F.3d at 762.

Plaintiffs further argue that even if their motion to consolidate was a proposal for a joint trial, removal was improper because their motion was not filed in the right court. They point out that in *Koral* we said a proposal for a joint trial "must be to the court in which the suits are pending." 628 F.3d at 947. They argue that because their motion for consolidation was filed in the Supreme Court of Illinois and not in any circuit court in which their cases were pending, removal as a

mass action was improper. Section 1332(d)(11)(B)(i) does not say where a proposal for a joint trial must be made, but a reasonable conclusion is that it must be made to a court that can effect the proposed relief. In *Bullard*, for example, the statement made by plaintiffs' attorney was made to the right court because it was made in the complaint to the court where the cases were pending. 535 F.3d at 761. Here, plaintiffs filed their motion to consolidate with the Supreme Court of Illinois, which has the power not only to consolidate plaintiffs' cases through trial but also to decide where plaintiffs' cases will ultimately be. *See* Ill. Sup. Ct. R. 384(a). In all likelihood, the Supreme Court would transfer these actions back to one of the judicial circuits in which the suits are currently pending. As a result, plaintiffs' motion to consolidate was sufficient to create a mass action.

We REVERSE Judge Murphy's order granting plaintiffs' motions to remand and AFFIRM Judge Darrah's order denying plaintiffs' motion to remand.