Opinion by Judge GOULD; Dissent by Judge RAWLINSON.
OPINION
GOULD, Circuit Judge:
We must decide whether removal is proper under the “mass action” provision of the Class Action Fairness Act of 2005 (“CAFA”), 28 U.S.C. § 1332(d)(ll)(B)(i), when plaintiffs in several actions[1] moved for coordination in the state trial court pursuant to California Code of Civil Procedure section 404 “for all purposes” and justified .their request in part by asserting a need to avoid inconsistent judgments. CAFA extends federal removal jurisdiction for certain class actions and for mass actions in which “monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact.” 28 U.S.C. § 1332(d)(ll)(B)(i). Because we conclude that all of the CAFA requirements for a removable mass action are met under the totality of the circumstances in these cases, we reverse the district court’s remand orders.
*1221 I
Defendants-Appellants Teva Pharmaceuticals USA, Inc. (“Teva”) and Xanodyne Pharmaceuticals, Inc. (“Xanodyne”) appeal from the district court’s orders remanding these cases to state court. These cases were two of twenty-six pending before the district court alleging injuries related to the ingestion of propoxyphene, an ingredient found in the Darvocet and Darvon pain relief drugs, as well as in generic pain relievers. There are additional propoxy-phene cases pending in multidistrict litigation in the Eastern District of Kentucky. See In re: Darvocet, Darvon & Propoxyphene Prods. Liab. Litig., 780 F.Supp.2d 1379 (J.P.M.L.2011). .
Propoxyphene is a pain reliever that was used in the United States to treat mild to moderate pain from 1957 through November 2010, when drugs containing propoxy-phene were taken off the market because of safety concerns. Teva held the rights to the generic form of Darvocet and Darvon, and Plaintiffs allege that Teva was involved in all aspects of the creation, distribution, and sale of generic propoxy-phene products. Xanodyne acquired the rights to Darvocet and Darvon in 2007.
To date, more than forty actions have been filed in California state courts regarding propoxyphene pain relievers. On October 23, 2012, a group of attorneys responsible for many of the propoxyphene actions against Teva, Xanodyne, and other defendants filed petitions asking the California Judicial Council to establish a coordinated proceeding for all California pro-poxyphene actions under section 404 of the California Code of Civil Procedure.[2] California Code of Civil Procedure section 404.1, which sets out the standards for coordination, states:
Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.
Plaintiffs asked for coordination of their lawsuits for reasons consistent with the above factors, including concerns that there could be potential “duplicate and inconsistent rulings, orders, or judgments,” and that without coordination, “two or more separate courts ... may render different rulings on liability and other issues.” Plaintiffs argued in their petitions and the supporting memoranda that the cases should be coordinated before one judge “hearing all of the actions for all purposes,” to address “the same or substantially similar” causes of action, is *1222 sues of law, and issues of material fact. After these petitions for coordination were filed, Teva and Xanodyne removed the cases to federal district court under CAFA’s mass action provision.
CAFA provides federal district courts with original jurisdiction over “mass actions” if the actions meet all of the statutory requirements. 28 U.S.C. § 1332(d). CAFA defines a mass action as:
[A]ny civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose' claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).
28 U.S.C. § 1332(d)(11)(B)(i). The parties dispute only whether Plaintiffs’ petitions for coordination constitute proposals for the cases “to be tried jointly” under CAFA.
The district court held that it lacked jurisdiction under CAFA because Plaintiffs’ petitions for coordination were not proposals to try the cases jointly, and it remanded the cases back to state court. The district court distinguished these cases from the Seventh Circuit’s decision in In re Abbott Laboratories, Inc., 698 F.3d 568 (7th Cir.2012), and held that Plaintiffs’ petitions were sufficiently different from Abbott’s consolidation request because the petitions filed in this case focused on pre-trial purposes, while the petition filed in Abbott explicitly sought consolidation “through trial.”
Defendants sought permission to appeal the district court’s remand orders, which we granted. A three-judge panel affirmed. See Romo v. Teva Pharm. USA, Inc., 731 F.3d 918 (9th Cir.2013), cert. denied, - U.S. -, 134 S.Ct. 2872, 189 L.Ed.2d 833 (2014). A majority of nonre-eused judges voted to rehear the case en banc. 742 F.3d 909 (9th Cir.2014) (order). We review the district court’s remand order de novo. See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 679 (9th Cir.2006) (per curiam).
II
The controlling issue before us is whether Plaintiffs’ petitions to coordinate actions under California Code of Civil Procedure section 404 constitute proposals for these actions to be tried jointly, making the actions a “mass action” subject to federal jurisdiction under CAFA. To answer that question, we turn to the language and purpose of CAFA. Mississippi ex rel. Hood v. AU Optronics Corp., — U.S. -, 134 S.Ct. 736, 741-44, 187 L.Ed.2d 654 (2014). The statutory issue for us is whether the petitions filed in this case, seeking coordination of the California pro-poxyphene actions, were in legal effect proposals for those actions to be tried jointly. This is a question of first impression in the Ninth Circuit.
Congress enacted CAFA in 2005 to “curb perceived abuses of the class action device which, in the view of CAFA’s proponents, had often been used to litigate mul-tistate or even national class actions in state courts.” Tanoh v. Dow Chem. Co., 561 F.3d 945, 952 (9th Cir.2009). CAFA further extends federal jurisdiction over “mass action” cases when several requirements are met, although only the “proposed to be tried jointly” requirement is at issue here. See 28 U.S.C. § 1332(d)(2), (6), (11)(A).
We have said that CAFA’s mass action provision is “fairly narrow,” Tanoh, 561 F.3d at 953, given that it applies only if there is an aggregate amount in controversy of $5 million or more, at least one plaintiff who is a citizen of a state or foreign state different from that of any defendant, and when “monetary relief *1223 claims of 100 or more persons are proposed to be tried jointly,” 28 U.S.C. § 1332(d)(ll)(B)(i); see Tanoh, 561 F.3d at 952-53. Tanoh v. Dow Chemical Co. holds, consistent with the plain language of CAFA, that the proposal to "try claims jointly must come from the plaintiffs, not from the defendants. 561 F.3d at 953. Further, Tanoh correctly holds that if the mass action provision’s requirements are not met, we cannot ignore its terms based on general statements in CAFA’s legislative history or the theory that plaintiffs should not be able to “game” jurisdictional statutes to remain in state court. Id. at 954.
Tanoh also holds that plaintiffs are the “masters of their complaint” and do not propose a joint trial simply by structuring their complaints so as to avoid the 100-plaintiff threshold. Id. at 953, 956; see Parson v. Johnson & Johnson, 749 F.3d 879, 886 (10th Cir.2014); Scimone v. Carnival Corp., 720 F.3d 876, 881-82 (11th Cir.2013); Anderson v. Bayer Corp., 610 F.3d 390, 393 (7th Cir.2010). Under this view, plaintiffs can structure actions in cases involving more than 100 potential claimants so as to avoid federal jurisdiction under CAFA. That is not surprising, and it is analogous to the fact that individuals and corporations can structure transactions so as to avoid statutory prohibitions or terms. Amici Chamber of Commerce of the United States of America and PhRMA urge us to conclude that the Supreme Court’s decision in Standard Fire Insurance Co. v. Knowles, — U.S. -, 133 S.Ct. 1345, 185 L.Ed.2d 439 (2013), fatally “undermines Tanoh’s reasoning and holding.” We reject this interpretation of Knowles, which itself reiterates that plaintiffs are the “masters of their complaints” who may structure those complaints to avoid federal jurisdiction in some circumstances. See id. at 1350.[3]
But while plaintiffs are the masters of their complaints, they are also the masters of their petitions for coordination. Stated another way, when we assess whether there has been a proposal for joint trial, we hold plaintiffs responsible for what they have said and done. California Code of Civil Procedure section 404 allows the coordination of “all of the actions for all purposes” and presents a factor-based test to determine whether coordination is appropriate. Plaintiffs voluntarily asked for coordination under section 404, and they submitted memoranda in support of their petitions for coordination. We will carefully assess the language of the petitions for coordination to see whether, in language or substance, they proposed a joint trial.
We conclude that Plaintiffs’ petitions for coordination are proposals for joint trial. First, the petitions say that Plaintiffs seek coordination “for all purposes.” “All purposes” must include the purposes of trial. So reading the petitions literally, Plaintiffs, who in total number far more than 100, were seeking a joint trial. Second, the specific reasons given for coordination also support the conclusion that a joint trial was requested. For example, Plaintiffs listed potential issues in support of their petitions that would be addressed only *1224 through some form of joint trial, such as the danger of inconsistent judgments and conflicting determinations of liability.
Our conclusions here are consistent with Tanoh, where we held that “the decision to try claims jointly and thus qualify as a ‘mass action’ under CAFA should remain ... with plaintiffs.” 561 F.3d at 954. Unlike the plaintiffs in Tanoh, who merely filed separate actions that the defendant sought to try jointly, Plaintiffs’ filing of the petitions for coordination was a voluntary and affirmative act that we conclude was a proposal to try the cases jointly. See id. at 953-54.
Plaintiffs contend that they were simply reciting the section 404.1 factors, but we find this argument unpersuasive given the language of the petitions and the supporting memoranda. Plaintiffs did not simply recite the factors for coordination. They asserted that “[t]he inevitability of realizing the inconsistency and duplication factor of California Code of Civil Procedure Section 404.1[ ] weighs heavily in favor of coordination.” Plaintiffs further asserted that “issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants,” would require coordination. None of these particular arguments is listed in the section 404 factors, and achieving consistency in these areas would almost certainly require a joint trial.[4] Plaintiffs’ petitions requested more than pre-trial coordination. Plaintiffs repeatedly stated that the factors catalogued in section 404.1 all supported coordination, including the fact that “[o]ne judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice.” In the application of a jurisdictional rule, as well as in its establishment, we agree with the Supreme Court’s observation that “simplicity is a virtue.” Hood, 134 S.Ct. at 744 (internal quotation marks omitted). Looking at the plain language of Plaintiffs’ petitions and memoranda, we must conclude that Plaintiffs proposed a joint trial in asking that “all of the actions” be coordinated “for all purposes.”
This is not to say that all petitions for coordination under section 404 are per se proposals to try cases jointly for the purposes of CAFA’s mass action provision.[5] We can envision a section 404 petition that expressly seeks to limit its request for coordination ' to pre-trial matters, and thereby align with the mass action provision’s exception for “any civil action in which ... the claims have been consolidated or coordinated solely for pretrial proceedings.” 28 U.S.C. § 1332(d)(ll)(B)(ii)(IV). It is not clear whether the California Judicial Council would grant coordination for less than “all purposes.” However, if Plaintiffs had qualified their coordination request by saying that it was intended to be solely for pre-trial purposes, then it would be difficult to suggest that Plaintiffs had proposed *1225 a joint trial.[6] But where, as here, plaintiffs petition for coordination by arguing that “hearing all of the actions” together “for all purposes” would promote the ends of justice, they propose a joint trial, triggering federal jurisdiction as a mass action under CAFA.
We reject the rule urged by Plaintiffs that a petition to evoke CAFA must expressly request a “joint trial” in order to be a proposal to try the cases jointly. Although such a rule would be easy to administer, it would ignore the real substance of Plaintiffs’ petitions. See Abbott, 698 F.3d at 572 (“[A] proposal for a joint trial can be implicit.”); see also Atwell v. Bos. Scientific Corp., 740 F.3d 1160, 1163 (8th Cir.2013) (holding that proposals for joint trial may be made implicitly); Bullard v. Burlington N. Santa Fe Ry., 535 F.3d 759, 762 (7th Cir.2008) (same).
Two of our sister circuits have reached similar conclusions when examining petitions for consolidation. In Abbott, the Seventh Circuit reasoned that the plaintiffs’ petition for consolidation “through trial” and “not solely for pretrial proceedings” was a proposal to try jointly their separately filed cases. 698 F.3d at 573. The Seventh Circuit concluded that, contrary to the plaintiffs’ assertion that they did not specifically ask for a joint trial, the language of the plaintiffs’ petition for consolidation could be construed only as an implicit proposal for joint trial. Id. Plaintiffs here seek to distinguish their own “for all purposes” language from the “through trial” language present in Abbott, but the differences between the two phrasings are superficial, and we are not persuaded.
The Eighth Circuit adopted Abbott’s reasoning, concluding that plaintiffs proposed a joint trial when they filed motions asking for special assignment “to a single judge for both pretrial and trial matters,” and then argued at the motions hearing that the special assignment made sense “for consistency of rulings, judicial economy, [and] administration of justice.” Atwell, 740 F.3d at 1164 (alteration in original). The Eighth Circuit decided that “the motions for assignment to a single judge ..., combined with plaintiffs’ candid explanation of their objectives, required denial of the motions to remand” the cases to state court. Id. at 1166. Plaintiffs further attempt to distinguish their own petitions for coordination from Atwell on the basis that “[t]here is no such explicit language in Plaintiffs’ petition,” but again we find this distinction unpersuasive given the language of Plaintiffs’ memoranda in support of their petitions, which both sought coordination “for all purposes” and gave reasons that likely would be satisfied only by a joint trial of some sort.
Asking for coordination or consolidation “for all purposes” or “through trial” to address common issues of law or fact is a proposal to try the cases jointly and creates federal jurisdiction under CAFA’s mass action provision. To hold otherwise would ignore the plain language, as well as the substance, of Plaintiffs’ section 404 petitions and supporting memoranda.
Ill
Because we conclude that Plaintiffs’ petitions for coordination each constitute a proposal to try the cases jointly, we REVERSE the district court’s orders granting Plaintiffs’ motions to remand.[7]
*1226 REVERSED.[8]

. Each of these actions has fewer than 100 plaintiffs, but the actions have far more than 100 plaintiffs when considered together.

. Under section 404, petitions for coordination are handled by the Chairperson of the Judicial Council, who "may assign a judge to determine whether the actions are complex, and if so, whether coordination of the actions is appropriate.” Cal.Civ.Proc.Code § 404. The extent of coordination and the purposes for which cases are coordinated, including pre-trial, trial, and post-trial proceedings, are within the sole discretion of the Judicial Council and any judge assigned pursuant to section 404. See id. §§ 404.1-.9; Abelson v. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa., 28 Cal.App.4th 776, 35 Cal.Rptr.2d 13, 18 (1994) ("As a general matter the rules implementing our coordination statutes vest the coordinating judge with flexible procedures and whatever great breadth of discretion may be necessary and appropriate....” (internal quotation marks and footnote omitted)).

. In Knowles, the Supreme Court rejected a proposed class action plaintiff’s attempt to stipulate that damages would not exceed $5 million. 133 S.Ct. at 1350 ("|T]he stipulation at issue here can tie Knowles’ hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class.”). It is possible to read Knowles narrowly to mean only that named plaintiffs cannot stipulate to limit the damages claims of unnamed class members prior to class certification. Yet, the Court did limit in at least one way the strategies a plaintiff may use to avoid federal jurisdiction under CAFA when it declined to “exalt form over substance” for "CAFA jurisdictional purposes.” Id.

. Although some of these purposes could theoretically be addressed without a joint trial, through default judgment or summary judgment, it is not realistic to think that all of the concerns listed in Plaintiffs' petitions for coordination could be achieved in pre-trial procedures. Those concerns were joined with requests to coordinate the actions "for all purposes.” The petitions did not limit their scope to pre-trial procedures.

. Plaintiffs also argue that their petitions were not proposals to try the cases jointly because section 404 petitions for coordination need not result in coordination for all purposes under McGhan Medical Corp. v. Superi-or Court, 11 Cal.App.4th 804, 14 Cal.Rptr.2d 264 (1992). However, this argument is misplaced because under the plain language of CAFA, we must determine whether Plaintiffs proposed a joint trial, not whether one will occur at some future date. That a judge has discretion to limit coordination to pretrial matters does not weigh on whether Plaintiffs proposed a joint trial.

. The parties have argued about whether invoking section 404 in and of itself, even in a petition that expressly sought only pre-trial coordination, would constitute a proposal to try cases jointly, but that issue is not now before us.

. In light of our decision, we do not reach Defendants-Appellants’ alternative argument that federal subject-matter jurisdiction exists on other grounds. '

. We disagree with our dissenting colleague for the reasons stated in this opinion. First, the dissent relies on parts of plaintiffs’ memorandum supporting the petition for coordination that urged benefits of coordinating discovery, but nowhere in the petition or supporting memorandum was it suggested that coordination would be solely for pre-trial discovery. Second, the dissent gives inadequate consideration to the fact that the petition itself recites that it seeks coordination of all the actions “for all purposes.” Because coordinating "for all purposes” includes for the purposes of trial, the petition for a coordinating state court was implicitly a request for joint trial. Third, the position urged by the dissent would create conflict with decisions of the Seventh and Eighth Circuits, which have recognized that there can be implicit requests for joint trial evoking CAFA jurisdiction. Fourth, the principles of ambiguity not favoring federal jurisdiction and of strict construction of jurisdictional statutes are not offended here because there is nothing ambiguous about asking for coordination "for all purposes.” Fifth, the district court cases cited by the dissent in its footnote 1 are not persuasive to us, because these cases do not interpret CAFA, do not involve a petition for consolidation or coordination for all purposes, and do not address the persuasive authority of Seventh and Eighth Circuits on such issues.