**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-1221 & 17-1226
_____

MELISSA RAMIREZ, ET. AL.

v.

VINTAGE PHARMACEUTICALS, LLC;
ENDO PHARMACEUTICALS, INC;
ENDO HEALTH SOLUTIONS, INC.,
f/k/o ENDO PHARMACEUTICALS HOLDINGS, INC.;
PATHEON, INC.

Patheon, Inc.;
Appellant in 17-1121

Vintage Pharmaceuticals, LLC;
Endo Pharmaceuticals, Inc.;
Endo Health Solutions, Inc.,
Appellants in 17-1126
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-15-cv-06162)
District Judge: Honorable Juan R. Sanchez

————————

Argued February 22, 2017

————————

Before: CHAGARES, VANASKIE, and KRAUSE,
*Circuit Judges*


(Opinion Filed:  March 28, 2017)

Barbara R. Binis
REED SMITH LLP
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA  19103

Angela R. Vicari              [Argued]
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019
        *Counsel for Appellants Vintage Pharmaceuticals, LLC,*
        *Endo Pharmaceuticals, Inc & Endo Health Solutions,*
        *Inc.*

Christopher R. Carton
Loly G. Tor
K&L GATES LLP
One Newark Center
10th Floor
Newark, NJ  07102

2

Amy L. Groff
K&L GATES LLP
17 North Second Street
18th Floor
Harrisburg, PA  17101
    *Counsel for Appellant Patheon Inc.*

Steven L. Beard
STEVEN L. BEARD, P.C.
Suite 2100
1380 West Paces Ferry Road, N.W.
Atlanta, GA 30327

Keith D. Bodoh         [Argued]
ROBERTSON, BODOH & NASRALLAH, LLP
990 Cobb Parkway North
Suite 205A
Marietta, GA  30062

Walter Z. Steinman
LAW OFFICES OF WALTER Z. STEINMAN
400 Greenwood Avenue
Wyncote, PA  19095
    *Counsel for Appellees, Melissa Ramirez, et al.*

---

OPINION OF THE COURT

---

VANASKIE, *Circuit Judge.*

The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005), extends federal jurisdiction to "mass actions." *See* 28 U.S.C. § 1332(d)(11). One mandatory characteristic of a mass action is a proposal by more than one hundred persons to try their claims jointly. *See* 28 U.S.C. § 1332(d)(11)(B)(i). However, cases that are consolidated or coordinated only for pretrial purposes are explicitly exempted from CAFA's mass action provision, and thus are not removable. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). The question before us on appeal is whether the Complaint filed by the Plaintiff-Appellees in state court proposed a joint trial such that their action was properly removed to federal court.

Plaintiff-Appellees are a group of 113 birth control users affected by a packaging error on certain brands of Qualitest birth control pills. These affected users filed a products liability action against the Defendant-Appellant manufacturers in Pennsylvania state court that was subsequently removed. Plaintiffs now argue this removal was improper because they did not propose to try their claims jointly, but their Complaint sends mixed signals. Weighing in favor of federal jurisdiction under CAFA, Plaintiffs filed a single complaint which joins the claims of 113 persons and contains numerous instances of language that indicates a single trial was contemplated. Cutting against federal

4

jurisdiction, the Complaint specifies that the Plaintiffs' "claims have been filed together . . . for purposes of case management on a mass tort basis." (Compl. ¶ 1; J.A. 139.) Plaintiffs characterize this language as seeking to limit the coordination of their claims to pretrial matters. They also point to a motion filed in the state court requesting admission to the Mass Tort Program, which allegedly prevents their claims from being tried jointly.

After the District Court ordered the action be remanded to state court for lack of subject matter jurisdiction, we accepted the manufacturers' request for appeal under 28 U.S.C. § 1453(c)(1). Upon careful consideration, we will reverse the Order of the District Court and find federal jurisdiction to be proper under CAFA. Importantly, we determine that the language Plaintiffs hold out as disclaiming their intent to seek a joint trial is not sufficiently definite to prevent removal as a mass action. Where, as here, more than 100 plaintiffs file a single complaint containing claims involving common questions of law and fact, a proposal for a joint trial will be presumed unless an explicit and unambiguous disclaimer is included.

## I.

The consumer products liability case before us begins, like many others, with a recall. A packaging error affecting a brand of Qualitest birth control pills was discovered in the wake of a consumer product complaint. This error reversed the sequence of pills contained within each birth control package, which precipitated an unintended and less effective dosage program. Eight brands of Qualitest birth control pills—each of which shared a common packaging process and were at risk for the same error—executed nationwide

5

recalls reaching more than 3.2 million blister packs of birth control.

Plaintiffs, alleging that they were harmed by the packaging error, launched this products liability action against the Defendant-Appellant manufacturers of the birth control pills and packaging in the Court of Common Pleas of Philadelphia County, Pennsylvania.[1] The Complaint alleges that the similarly-situated plaintiffs are residents of 28 different states "whose claims arise out of a common set of operative facts . . . and which claims have been filed together . . . for purposes of case management on a mass tort basis." (Compl. ¶ 1; J.A. 139.)

The Complaint contains a section devoted to "FACTS COMMON TO ALL COUNTS" and a "DAMAGES" section that divides the 113 plaintiffs into three categories based on their state residency. After each count in the Complaint, Plaintiffs collectively "request a jury trial." (Compl. ¶¶ 21, 25, 29, 37, 41; J.A. 145–50.) In the Prayer for Relief, Plaintiffs, again collectively, seek "an award of damages in such amount to be determined at trial." (Compl. ¶ 41; J.A. 150.) Similarly, the Complaint's Notice to Defend warns the manufacturers that if they fail to defend, "the case may proceed without you and a judgment may be entered against you by the court." (J.A. 137.)

_____

[1] A separate action had been filed in the state of Georgia that was then removed to the Northern District of Georgia. The district court judge denied the plaintiffs' motion for class certification on November 4, 2015. *Shepherd v. Vintage Pharm., LLC*, 310 F.R.D. 691, 701 (N.D. Ga. 2015). This action followed the very next day.

6

One week after filing their Complaint, Plaintiffs submitted a motion to assign their action to the Court of Common Pleas' Mass Tort Program. The captions of that motion and the accompanying memorandum in support state "JURY TRIAL DEMANDED." Before that motion was briefed or ruled upon, the manufacturers removed the action to the Eastern District of Pennsylvania as a "mass action" under CAFA. 28 U.S.C. § 1332(d)(11). Plaintiffs sought to remand the action to the Court of Common Pleas on the ground that they have not presented a "mass action" within the purview of CAFA. The District Court held oral argument after receiving briefs and other material submissions. The District Court ultimately granted the Motion to Remand, concluding that "CAFA precludes federal jurisdiction in this matter because Plaintiffs did not propose to try their claims jointly." *Ramirez v. Vintage Pharm., LLC*, No. 15-cv-6162 (E.D. Pa. Sep. 21, 2016); (J.A. 2.) After the manufacturers' emergency motion for a stay pending appeal in the District Court was denied, they requested this appeal.

## II.

The District Court had subject matter jurisdiction over the removed action under CAFA, 28 U.S.C. § 1332(d)(11). After the District Court ordered remand, we opted to accept the manufacturers' appeal under 28 U.S.C. § 1453(c)(1). We apply plenary review to issues of subject matter jurisdiction, including the determination of whether to properly regard a case as a mass action under CAFA. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

## III.

7

CAFA gives the federal courts subject matter jurisdiction over "mass actions," a term that includes "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," and which meet the specified jurisdictional amount requirements. 28 U.S.C. § 1332(d)(11)(B)(i). CAFA also requires that a mass action have an aggregate amount in controversy exceeding $5,000,000 and minimal diversity among parties. *Id.* § 1332(d)(2), (d)(11)(A). Importantly, "claims [that] have been consolidated or coordinated solely for pretrial proceedings" will not qualify as a mass action under CAFA. *Id.* § 1332(d)(11)(B)(ii)(IV).

The manufacturers' appeal rests entirely on whether Plaintiffs have proposed to try their claims jointly. *Id.* § 1332(d)(11)(B)(i). In their quest for remand to the Court of Common Pleas, Plaintiffs insist that they made no such proposal for a joint trial of all 113 claims included in their Complaint. The District Court agreed and granted their request for remand.

For purposes of determining whether an action qualifies as a mass action, a proposal for a joint trial may be either explicit or implicit. *Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1163 (8th Cir. 2013); *In re Abbott Labs., Inc.*, 698 F.3d 568, 572–73 (7th Cir. 2012). An explicit proposal encompasses a clear textual request for a joint trial contained within the complaint, a motion, or some other filing by a group of plaintiffs. An explicit proposal can also be made orally at some point during the litigation. By comparison, an implicit proposal may be found when all of the circumstances of the action, including the language of the complaint and the structure of the action, lead to the assumption that the claims

8

will be tried jointly. *See Abbott Labs.*, 698 F.3d at 573 ("a proposal for a joint trial can be implicit, particularly where 'the assumption would be that a single trial was intended'" (quoting *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011)).

There are at least three explicit indications that Plaintiffs proposed a joint trial in this action, all of which are plain from the text of their initial filings. In fact, the language that they chose to incorporate into their Complaint and Notice to Defend contains many references to a single trial. First, after each count in the Complaint, Plaintiffs "respectfully request a jury trial"—never multiple or separate trials. (Compl. ¶¶ 21, 25, 29, 37, 41; J.A. 145–50.) Next, they continue this singular language in their Prayer for Relief, which seeks "an award of damages in such amount to be determined at trial." (Compl. ¶ 41; J.A. 150.) Finally, the Notice to Defend warns the manufacturers that if they fail to enter an appearance and file their defenses and objections to Plaintiffs' claims, "a judgment" may be entered against them. (J.A. 137.) Plaintiffs also specify that their "claims arise out of a common set of operative facts" and that these facts are "common to all counts." (Compl. ¶ 1; J.A. 139, 141–42.) These instances of singular language, taken together, provide strong evidence of a proposal for joint trial.

The structure of Plaintiffs' Complaint also implies that they have proposed to try all 113 of their claims jointly. Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial. *See, e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013) ("plaintiffs can propose a joint trial, . . . by naming 100 or more plaintiffs in a single complaint");

9

*Abbott Labs.*, 698 F.3d at 572 ("one complaint implicitly proposes one trial"); *Koral*, 628 F.3d at 947 ("[W]here a single complaint joins more than 100 plaintiffs' claims without proposing a joint trial, . . . the assumption would be that a single trial was intended—one complaint, one trial, is the norm.").

Were this the end of our inquiry, we would have no difficulty finding that Plaintiffs had, at the very least, implied that they were seeking a joint trial on their claims. However, Plaintiffs have included some rather ambiguous language in their Complaint that they argue should be read as a disclaimer that a joint trial had been proposed. Specifically, the Complaint states that their "claims have been filed together . . . for purposes of case management on a mass tort basis." (Compl. ¶ 1; J.A. 139.) Because CAFA explicitly exempts "claims [that] have been consolidated or coordinated solely for pretrial proceedings," 28 U.S.C. § 1332(d)(11)(B)(ii)(IV), Plaintiffs assert that this language evinces their intent to limit coordination of their claims to "case management," which they characterize as referring strictly to a pretrial phase of the litigation. The District Court agreed that the term "case management" extended only to pretrial procedures and deadlines, and explained that "by stating the filing of their claims together was for case management purposes, Plaintiffs have . . . made their intent clear." *Ramirez*, No. 15-cv-6162; (J.A. 3.)

Plaintiffs' contention that they intentionally worded their Complaint to avoid proposing a joint trial of all their claims is constructed on a solid legal foundation. As masters of their Complaint, Plaintiffs may structure their action in such a way that intentionally avoids removal under CAFA. *See Scimone*, 720 F.3d at 883–84. For example, courts have

10

repeatedly held "that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs." *Id.* at 884. The same principle applies where plaintiffs "expressly seek[] to limit [their] request for coordination to pre-trial matters, and thereby align with the mass action provision's exception for 'any civil action in which . . . the claims have been consolidated or coordinated solely for pretrial proceedings.'" *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1224 (9th Cir. 2014) (en banc) (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)(IV)). This principle was applied in *Parson v. Johnson & Johnson*, where the Tenth Circuit found that a group of plaintiffs had expressly disclaimed the intention to try their claims jointly when the complaint made clear that "[j]oinder of Plaintiffs' claims is for the purpose of pretrial discovery and proceedings only and is not for trial." 749 F.3d 879, 888 n.3 (10th Cir. 2014).

In accordance with these decisions, a clear and express statement in the Complaint evincing an intent to limit coordination of claims to some subset of pretrial proceedings would effectively shield this action from removal under CAFA. But the language Plaintiffs ultimately chose to include in their Complaint is far from precise or definitive enough to signal their intent to limit coordination to pretrial matters. The phrase upon which Plaintiffs rely—that the "claims have been filed together . . . for purposes of case management on a mass tort basis"—provides no indication that they seek coordination *only* for pretrial proceedings. Even if Plaintiffs had included the word "only" in this context, we would still need to determine whether "case

11

management" does, in fact, reference only pretrial phases of the litigation.[2]

Despite this ambiguity, Plaintiffs contend that the burden of proof falls on the manufacturers, and that the language they have included in their Complaint is enough to prevent the manufacturers from satisfying that burden. While the burden of proof does indeed belong to the manufacturers as the side seeking removal, *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006), we hold that they have met that burden under these circumstances. With the exception of the language regarding case management, the entirety of the Complaint and the Notice to Defend—the documents by which Plaintiffs initiated this action— contemplate a single joint trial. Similarly, no effort was made to structure the action in a way that would preclude CAFA jurisdiction, which would have been as easy as filing two actions—each with less than 100 claims—instead of a single action with all 113 claims. Critically, had Plaintiffs made a definitive and explicit statement limiting coordination of their claims to pretrial matters, removal would have been prevented. Instead, we are left with a litany of indications that a joint trial was proposed and no conclusive countervailing indication to serve as a rebuttal.

Plaintiffs are provided with a great deal of power in the CAFA removal context. They have the ability to

_____

[2] Notably, a Court of Common Pleas local rule indicates that "case management" can encompass trial management. *See* Pa. Ct. C.P. Phila. Civ. R. 215(A)(2) ("All jury cases . . . shall be listed for trial . . . in accordance with the pertinent Case Management Order.").

12

effectively insulate themselves from CAFA jurisdiction simply by taking the correct steps in structuring their action. Plaintiffs must carefully consider how they craft their complaints and other initial filings, and any intentional efforts to avoid CAFA jurisdiction should be clear and unambiguous. Where they opt to file a single complaint containing the claims of more than 100 plaintiffs, they must be even more explicit to overcome the presumption that those claims will be tried jointly. This is especially true where, as in Pennsylvania, the state's permissive joinder rules explicitly presume that persons who join as plaintiffs in a single action based upon a common question of fact or law will have their claims tried jointly. Pa. R. Civ. P. 2229, 2231(c); *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (examining how Illinois procedural rules treat joined claims). Ultimately, plaintiffs bear the burden of clarity in this context.

## IV.

Plaintiffs also put forth a non-textual argument asserting that their motion for admission to the Mass Tort Program is evidence of their intent to try their claims separately. Plaintiffs' conduct undertaken after filing the Complaint is certainly relevant, as long as that conduct occurred prior to removal.[3] *See Scimone*, 720 F.3d at 881 ("what is clear from [CAFA's] text and structure is that the

---

[3] Of course, we ordinarily examine the case at the time the complaint was filed, *see Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013), unless subsequent developments are what triggered removal, *see* 28 U.S.C. § 1446(b)(3). Such is not the case here.

plaintiffs can propose a joint trial, either by naming 100 or more plaintiffs in a single complaint or by their litigation conduct at any time prior to defendants' removal of their action to federal court"). Even so, the face of the Complaint and the structure of the action are the best indicators of whether a joint trial is being sought. A group of plaintiffs may implicitly or explicitly propose a joint trial later in the litigation; however, a group of plaintiffs cannot similarly file a complaint that explicitly or implicitly proposes a joint trial, only to then rely on their later conduct as evidence that they had not initially made such a proposal. Applying this principle, Plaintiffs' motion for admission to the Mass Tort Program cannot save them from removal—regardless of its content or effect—where the structure of their action and initial filings imply a proposal for a joint trial.

But even if we suspend this principle, Plaintiffs' motion and potential admission to the Mass Tort Program do not evince an intention that their claims be tried separately. Their reliance on admission to the Mass Tort Program to prove their intent to try the claims separately hinges on their assertion that they would be unable to try their claims jointly under the rules of the program. *See In re: Mass TORT and Asbestos Programs*, General Court Reg. No. 2012-01, 2011 WL 8771684 (Pa. Com. Pl. 2011) ("Trial Order"). Intent is certainly pertinent to determining whether Plaintiffs have proposed a joint trial. *See Parson*, 749 F.3d at 888 ("[T]he common usage of the word 'propose' involves an intentional act."); *Scimone*, 720 F.3d at 884 ("The more natural reading of the [mass action] provision is that the plaintiffs must actually want, or at least intend to bring about, what they are proposing."). And a proposal for a joint trial cannot be made to a court that is unable to effectuate a joint trial under the

14

circumstances. *Briggs v. Merck Sharpe & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015) ("[I]f a court lacks the authority to grant a request for a joint trial, then plaintiffs cannot 'propose' a joint trial by making a request to that court."). But the Mass Tort Program does not necessarily prevent Plaintiffs from trying their claims in a fashion that would constitute a "joint trial."

The Trial Order governing the Mass Tort Program, at least for asbestos cases, does not permit cases involving the application of law from different states to be tried together, and it also limits the number of cases that can be jointly tried. *In re: Mass TORT and Asbestos Programs*, 2011 WL 8771684. Comparatively, Plaintiffs' Complaint presents 113 claims with plaintiffs from 28 different states. They emphasize that they divided the damages portion of their Complaint into three categories to account for the various state laws at play. But a joint trial can take a variety of other forms that would not be precluded by acceptance into the Mass Tort Program. The Seventh Circuit has succinctly explained that a joint trial may exist even where less than 100 claims have proceeded to trial or where issue preclusion might extend to the other claims that have yet to be tried:

> [A] joint trial does not have to encompass relief. For example, a trial on liability could be limited to a few plaintiffs, after which a separate trial on damages could be held. Similarly, we have said that a trial that involved only "10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs without another trial, is one in which the claims of 100 or more persons are being tried jointly." In short, a joint trial can take different forms as

15

> long as the plaintiffs' claims are being determined jointly.

*Abbott Labs.*, 698 F.3d at 573 (citations omitted).

Several circuits have also held that a "bellwether trial"[4] is a form of a joint trial. *See, e.g.*, *Atwell*, 740 F.3d at 1165–66; *but cf. Briggs*, 796 F.3d at 1051 ("a bellwether trial is not, without more, a joint trial within the meaning of CAFA"). Bellwether trials appear to be contemplated under the Mass Tort Program, which is consistent with the way most states treat mass tort cases. Moreover, while Plaintiffs have divided their damage claims into categories by state, they make no such differentiation in terms of liability. Thus, a decision at trial regarding the manufacturers' liability may well be preclusive as to all of Plaintiffs' claims, even if tried in a group the size of those permitted under the Mass Tort Program. *See Abbott Labs.*, 698 F.3d at 573 (a joint trial may exist where "a trial on liability [is] limited to a few plaintiffs" and is followed by "a separate trial on damages"). Such a sequence of events would be regarded as a joint trial, and because a joint trial is still possible under the rules of the Mass Tort Program, we do not find Plaintiffs' motion for admission to that program to evince an intent to try their claims separately.

---

[4] "A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability." *Briggs*, 796 F.3d at 1051.

## V.

For the foregoing reasons, the District Court's Order dated September 21, 2016, remanding this matter to the Court of Common Pleas of Philadelphia County will be reversed and this matter will be remanded to the District Court for further proceedings.