**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2940
_____

AUDI OF AMERICA, INC., An Organization Unit of Volkswagen
Group of America, Inc., A New Jersey Corporation

v.

BRONSBERG & HUGHES PONTIAC, INC., DBA Wyoming
Valley Audi, a Pennsylvania Corporation

NORTH AMERICAN AUTOMOTIVE SERVICES, INC.; NAPLETON WYOMING
VALLEY IMPORTS, LLC; MILLENNIUM HOLDINGS, IV, LLC; NAPLETON
INVESTMENT PARTNERSHIP, LP; EFN WYOMING VALLEY PROPERTIES, LLC,
                                                          Appellants
(Intervenors in District Court)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-16-cv-02470)
District Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on June 21, 2021

Before:  SMITH, Chief Judge, MATEY and FISHER, Circuit Judges

(Opinion filed November 16, 2021)

_____

OPINION[*]

_____

SMITH, *Chief Judge*

I.

This is an appeal from an order enforcing a consent decree. We previously

described our review of the facts of this case as "a long drive across miles of deception,"

and need not set forth a complete history here. *Audi of Am. v. Bronsberg & Hughes*

*Pontiac, Inc.*, 816 F. App'x 644, 646 (3d Cir. 2020) (not precedential). In brief,

Bronsberg & Hughes Pontiac, Inc. ("Wyoming Valley") entered into a dealership

agreement with Audi of America, Inc. ("Audi") in 1997. Under the terms of the

dealership agreement, if Wyoming Valley intended to sell its Audi and Volkswagen

dealerships, Audi retained a right to approve or reject any change in ownership. In July

2016, Wyoming Valley entered into an Asset and Real Estate Purchase Agreement

("APA") with North American Auto Services, Inc., and its affiliated companies

(collectively "Napleton"), a large multi-national dealership group, agreeing to sell its

Audi and Volkswagen dealerships—along with its five other dealerships—to Napleton.

Because Wyoming Valley did not obtain Audi's approval for the ownership

change, Audi filed suit against Wyoming Valley and moved for a temporary restraining

order ("TRO") and preliminary injunction, seeking to prevent Wyoming Valley from

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

closing on the APA or otherwise transferring any of its Audi dealership assets. The District Court granted Audi's motion, first entering a TRO, and then a preliminary injunction. Wyoming Valley asserted counterclaims against Audi, and Napleton intervened in the case to assert its own counterclaims.

In April 2017, Audi moved the District Court to extend the preliminary injunction until trial. The parties appeared before the District Court for a hearing on June 28, 2017. Before the hearing began, the District Judge met with counsel to discuss the possibility of settlement. When the parties reconvened on the record, the District Judge stated that they had reached an agreement according to which Wyoming Valley would be permitted to transfer its *non*-Audi assets to Napleton, but the Audi and Volkswagen dealerships would be severed from any contract of sale to Napleton, and Napleton would quit its interest in acquiring those dealerships. The District Judge further noted that even though Napleton "has quit its interests in these dealerships," A521, Napleton and Wyoming Valley reserved the right to pursue damages against Audi concerning the breach-of-contract disputes.

The next day, the District Court entered an order memorializing the parties' agreement (the "June 29 order"). Pursuant to the "Stipulated Terms" in that order, the parties agreed that: Napleton and Wyoming Valley could proceed with the sale of all the dealerships except Audi and Volkswagen; Order 1–2 ¶¶ 1–2; ECF No. 213; the Audi and

---

constitute binding precedent.

Volkswagen dealerships were "severed from any contract of sale to Napleton," and the preliminary injunction would remain in place with respect to those dealerships, *id.* at 2 ¶ 3; and, most relevant to this appeal, Napleton would "*forever quit its interest*, if any it has, in the ownership of the Wyoming Valley Audi and Volkswagen dealerships," *id.* at 3 ¶ 5 (emphasis added), and forbear "from suing any potential prospective purchaser" of those dealerships, *id.* at 5 ¶ 11. The June 29 order also set forth the issues to be litigated at trial, including whether Audi's right of first refusal had been violated, the valuation of the dealerships, and Wyoming Valley's and Napleton's counterclaims against Audi for damages. *Id.* at 3–4 ¶¶ 7–8.

The litigation continued, with all parties ultimately moving for summary judgment. On February 16, 2018, the District Court entered an order: (1) denying Audi's motion as to its claims against Wyoming Valley; (2) granting Wyoming Valley's motion as to Audi's claims against it; and (3) lifting the preliminary injunction. The District Court later dismissed four of Napleton's counterclaims and one of Wyoming Valley's. The parties settled Wyoming Valley's other counterclaim. At that point, only Napleton's claims against Audi for tortious interference remained. On March 16, 2018, the District Court entered summary judgment in favor of Audi as to those claims. Wyoming Valley and Napleton appealed, but we affirmed.

On June 25, 2020, three weeks after we issued our opinion affirming the District Court's judgment, Wyoming Valley and Napleton executed new APAs transferring

4

ownership of the Audi and Volkswagen dealerships from Wyoming Valley to Napleton. Audi immediately moved the District Court to enforce its June 29 order and declare the new APAs void. Audi argued that the June 29 order—which it characterized as an enforceable partial settlement order, or "consent decree"—makes clear that Napleton agreed to "forever quit" its interest in purchasing the Audi and Volkswagen dealerships. According to Wyoming Valley and Napleton, however, Napleton only quit its interest in the dealerships *pending resolution of the prior lawsuit*; now that that suit had been resolved, they argued, they were free to enter into new APAs. Moreover, Wyoming Valley and Napleton asserted, because the June 29 order imposed only a preliminary injunction that dissolved when the District Court entered final judgment in the case, the District Court lacked continuing jurisdiction to enforce it.

The District Court rejected the arguments made by Wyoming Valley and Napleton and explained that, contrary to their contention, the June 29 order memorialized a partial settlement agreement pursuant to which Napleton "*forever* quit its interest in purchasing the Audi and Volkswagen dealership[s] but was permitted to proceed with the purchase of the other 5 dealerships contained in the APA." Op. 8, ECF No. 592. According to the District Court, "Napleton's argument that the June 29, 2017 Order is a preliminary injunction order is a mischaracterization at best, and intellectually dishonest, bordering on sanctionable, at worst." *Id.* at 9. Having determined that the June 29 order was a consent decree that it retained jurisdiction to enforce, the District Court then agreed with

5

Audi that Wyoming Valley and Napleton had violated paragraph 5 of that order.

Accordingly, the District Court granted the motion to enforce and deemed the June 25, 2020 APAs between Wyoming Valley and Napleton null and void. Napleton appeals.[1]

## II.

### A.

Napleton asserts that the District Court lacked jurisdiction to enforce the June 29 order.[2] The District Court's jurisdiction to enforce that order turns on whether the order is a "consent decree," which the court retained jurisdiction to enforce, *see Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 277 (3d Cir. 2001) (explaining that a consent decree is, in part, "in the form of a judicial order that the parties expect will be subject to the rules generally applicable to other judgments and orders"), or a preliminary injunction, which dissolved on final judgment, *see Rodriquez v. 32nd Legislature of the V. I.*, 859 F.3d 199, 207 (3d Cir. 2017) ("A preliminary injunction cannot survive the dismissal of a complaint." (citation omitted)). According to Napleton, the June 29 order was a preliminary injunction—not a consent decree—because it provided only temporary restrictions and otherwise maintained the status quo.

We have explained that a consent decree is an order "that reflect[s] the settlement terms agreed by the parties and contain[s] an injunction." *Teamsters Loc. 177 v. United*

---

[1] We have jurisdiction under 28 U.S.C. § 1291.
[2] Issues of subject-matter jurisdiction receive plenary review. *Ramirez v. Vintage Pharm., LLC*, 852 F.3d 324, 328 (3d Cir. 2017).

*Parcel Serv.*, 966 F.3d 245, 254 (3d Cir. 2020); *see also Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 993 n.4 (8th Cir. 2003) ("A consent decree is defined as '[a] *court decree* that all parties agree to.'" (quoting Black's Law Dictionary 419 (7th ed. 1999))).  This describes precisely the June 29 order: it reflects the parties' agreement to resolve certain disputed matters and extend the preliminary injunction as to others.  The fact that the order did not finally resolve all claims does not mean that it is not a consent decree.  *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 330 n.4 (1977) (describing an agreement that narrowed the scope of the litigation as a "consent decree").  Therefore, the District Court correctly concluded that the order was a consent decree "subject to continued judicial policing."  *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983).

B.

1.

Having determined that the District Court retained jurisdiction to enforce the June 29 consent decree, we now turn to the District Court's substantive determination that Napleton violated the terms of the agreement memorialized in that order.  We review the District Court's order enforcing compliance with a consent decree for abuse of discretion.  *Holland*, 246 F.3d at 281.

Before we can review whether the District Court abused its discretion, we must

first determine what the underlying order required of Wyoming Valley. This raises a preliminary question concerning the standard for our review of the District Court's construction of the June 29 consent decree.

In *Holland v. New Jersey Department of Corrections*, we explained that "[b]ecause of the hybrid contractual/court order status of a consent decree, there is some confusion in the courts . . . as to what standard of review" to apply. 246 F.3d at 277. We recognized that some courts have deferred to a district judge's interpretation of consent decree provisions because, in their view, "few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." *Id.* (quoting *Berger v. Heckler*, 771 F.2d 1556, 1576 n.32 (2d Cir. 1985)). We rejected that approach, however, and concluded that because a consent decree embodies a contractual agreement between the parties, it "is subject to straightforward plenary or de novo review." *Id.*; *accord Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 463 (4th Cir. 2020) ("Abiding by the court's own subjective intent rather than an objective interpretation of the document would violate the first cardinal principle for interpreting consent orders: meaning is properly to be sought within the confines of the judicially approved documents expressing the parties' consent." (quotation marks and alteration omitted)); *Frew v. Janek*, 820 F.3d 715, 723 (5th Cir. 2016) ("Unlike some of our sister circuits, this Court does not defer to a district court's interpretation of a consent decree. Instead, we review questions of consent decree interpretation *de novo*." (footnote

8

omitted)); *see also Gov't Emps. Ret. Sys. of V. I. v. Gov't of V. I.*, 995 F.3d 66, 78 (3d Cir. 2021) (applying de novo review).

There may, however, be good reason to question whether the de novo standard of review we discussed in *Holland* should apply here, since Judge Jones himself drafted the stipulations at issue in the June 29 consent decree. While it is clear that de novo review is appropriate when the parties draft a contract-like agreement and the district court merely approves it, some measure of deference may be due when, instead, the district judge himself drafts an order memorializing what the parties agreed to during a conference or hearing that took place before him. *Cf. In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) ("[H]ere the Bankruptcy Court was asked to reopen proceedings to resolve a dispute regarding the Settlement Agreement it had previously confirmed. And because the Bankruptcy Court here was well suited to provide the best interpretation of its own order, it had jurisdiction to reopen." (quotation marks and citations omitted)). As the Seventh Circuit has observed, "[w]hen a judge is interpreting his own order, such as a consent decree that he entered, his interpretation is entitled to greater weight than when he is interpreting a contract with the formation of which he had nothing to do." *Foufas v. Dru*, 319 F.3d 284, 286 (7th Cir. 2003) (dictum). Thus, there may be good reason to distinguish *Holland*, as "[i]t is only sensible to give the court that wrote the consent judgment greater deference when it is parsing its own work." *Sault*

9

*Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371 (6th Cir. 1998); *see also Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 855 (9th Cir. 2007).

We need not resolve, however, the interesting question of whether some deference is due to the District Court's interpretation of the language in the consent decree. Applying either a deferential or de novo standard of review, we would affirm the District Court's judgment.

2.

Even under the more stringent de novo standard, we see no error in the District Court's conclusion that, under the Stipulated Terms of the June 29 consent decree, Napleton was foreclosed from ever purchasing the Audi and Volkswagen dealerships.

"[S]ince consent decrees . . . have many of the attributes of ordinary contracts, they should be construed basically as contracts." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236–37 (1975) (footnote omitted). "[A] provision in a decree is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations." *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999). Notably, "[i]n addressing the question of ambiguity, our focus remains on the contractual language itself, rather than on the parties' subjective understanding of the language." *Id.*

Paragraph 5 of the "Stipulated Terms" states in relevant part that "Napleton SHALL forever quit its interest, if any it has, in the ownership of the Wyoming Valley Audi and Volkswagen Dealerships." Order 3 ¶ 5, ECF No. 213. The phrase "shall

10

forever quit its interest" unambiguously indicates that the provision applies indefinitely and does not expire upon conclusion of the litigation. While Napleton insists that it agreed only to temporarily quit whatever legal interest it had in the dealerships at that time—which was none—we cannot disregard the word "forever" in paragraph 5. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) ("A court is not authorized to construe a contract in such a way as to modify the plain meaning of its words, under the guise of interpretation." (citation omitted)); *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990) ("The use of the word 'permanently' conveys the definite impression that the parties did not envision that the [relevant obligations] would end on certain dates in the future"). Therefore, the District Court did not err.

3.

Lastly, having determined that the District Court properly construed the terms of the June 29 order, we consider whether the District Court abused its discretion when it concluded that the June 2020 APAs violated that order. We conclude that Napleton's attempt to purchase the Audi and Volkswagen dealerships unquestionably violated its agreement to "forever quit its interest" in acquiring the dealerships. Therefore, the District Court acted within its discretion in granting the motion to enforce that order and by deeming the APAs void.

11

III.

We have considered Napleton's remaining arguments on appeal and conclude that they are meritless.  Accordingly, we will affirm.